```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```
--------------------------------------

G.F.F.,                                       25-cv-7368 (JGK)

           Petitioner,           **MEMORANDUM OPINION AND ORDER**

  - against -

LADEON FRANCIS, ET AL.,

           Respondents.

--------------------------------------

**JOHN G. KOELTL, District Judge:**

    The petitioner, G.F.F., seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241. G.F.F. challenges the lawfulness of his ongoing detention by Immigration and Customs Enforcement ("ICE"). Pet. Writ of Habeas Corpus ("Pet."), ECF No. 1. Although G.F.F. received an initial bond hearing, he argues that the hearing did not comport with the Fifth Amendment's Due Process Clause because the immigration judge ("IJ") required G.F.F. to prove that he posed no risk of flight or danger to the community, rather than requiring the Government to prove that he did pose such risks. G.F.F. relatedly argues that the Board of Immigration Appeals's ("BIA") administrative decision in Matter of Adeniji, 22 I. & N. Dec. 1102 (BIA 1999), which assigned noncitizens the burden of proof at bond hearings under 8 U.S.C. § 1226(a), was arbitrary and capricious within the meaning of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A). Finally,

1

G.F.F. argues that even if his initial bond hearing had been adequate, he is nevertheless entitled to a renewed bond hearing given the length of his detention. And at that renewed hearing, G.F.F. contends that the Government must prove by clear and convincing evidence that he is a risk of flight or a danger to the community.

### I.

#### A.

G.F.F. is a twenty-two-year-old Venezuelan national. Decl. of G.F.F. Supp. Pet. Writ of Habeas Corpus ("G.F.F. Decl.") ¶ 1, ECF No. 1-2. On May 15, 2024, G.F.F. unlawfully entered the United States near El Paso, Texas, where he was detained by an immigration officer. Declaration of Michael Charles ("Charles Decl.") ¶ 3, ECF No. 9. The Department of Homeland Security ("DHS") determined that G.F.F. was inadmissible and subject to removal pursuant to U.S.C. § 1225(b)(1). Id.

On May 17, 2024, an asylum officer conducted a credible-fear interview of G.F.F. pursuant to 8 C.F.R. § 208.30(d), during which the officer found that G.F.F. had established a credible fear of persecution in Venezuela based on his sexual orientation. Charles Decl. ¶ 5. G.F.F. was then placed into removal proceedings pursuant to 8 C.F.R. § 208.30(f). Id. In the meantime, G.F.F. was released on his own recognizance and reunited with his brother, who was living in Chicago. Declaration

of Grace Carney Brown Supp. Pet. Writ of Habeas Corpus ("Carney Decl.") ¶ 8, ECF No. 1-1.

On May 19, 2024, Customs and Border Protection issued a Notice to Appear ("NTA") charging G.F.F. as removable pursuant to 8 U.S.C. § 1182(a)(6)(A)(i) as a noncitizen present in the United States without being admitted or paroled, or who arrived in the United States at a time or place other than as designated by the Attorney General. Charles Decl. ¶ 6. The NTA ordered G.F.F. to appear at the Chicago Immigration Court on November 20, 2024 for his first master calendar hearing. Id. G.F.F. failed to appear for that hearing, however, and ICE moved to proceed against him in absentia. Id. ¶ 9. Instead, the Chicago Immigration Court rescheduled his hearing to January 6, 2025. Carney Decl. ¶ 12.

**B.**

On December 5, 2024, DHS officials encountered G.F.F. in the Bronx, New York, while executing an arrest warrant for someone else. Charles Decl. ¶ 10. G.F.F. alleges that he traveled to New York from Chicago in November 2024 to help his aunt settle the affairs of her son, who had committed suicide. Carney. Decl. ¶ 9.

The DHS officials arrested G.F.F. and presented him with a Notice of Custody Determination, which stated that he would be

detained "pending a final administrative decision in his case."[1] Charles Decl. ¶¶ 10-11. The next day, on December 6, 2024, DHS issued a Form I-213, which stated that G.F.F. was a member or associate of the transnational gang Tren de Aragua. Id. ¶ 12.

The Government moved to change the venue for G.F.F.'s removal proceeding from Chicago to the Varick Street Immigration Court in New York, and the Chicago IJ granted the motion. Id. ¶ 14. G.F.F. appeared by video teleconference for his first master calendar hearing in New York on December 18, 2024, id. ¶ 15, and his counsel entered an appearance with the immigration court on December 30, 2024, id. ¶ 16.

On January 24, 2025, G.F.F. filed written pleadings conceding his removability as charged in the NTA and applied for relief from removal. Id. ¶ 20. G.F.F. also requested a bond hearing. Id. ¶ 21.

The IJ held a bond hearing on January 29, 2025. The IJ assigned G.F.F. the burden of establishing that he was neither a risk of flight nor a danger to the community, and determined that he had failed to carry that burden. Id. ¶¶ 23-24. The IJ found that G.F.F. had failed to prove that he was not a member of Tren de Aragua given the evidence the Government had

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all internal alterations, citations, footnotes, and quotation marks in quoted text.

introduced — namely, the Form I-213 and a New York Post article describing the December 5, 2024 arrest. Carney Decl. ¶¶ 22, 32. The IJ also found that G.F.F. was a flight risk because he had failed to appear for his first master calendar hearing scheduled at the Chicago Immigration Court. Id. ¶ 32. The IJ concluded that G.F.F.'s failure to appear at that initial master calendar hearing was also probative of his dangerousness, because "fail[ure] to appear ... seems to be a pattern with some gang members." Id. G.F.F. appealed the IJ's decision to the BIA, which affirmed the IJ's bond order on August 26, 2025. Id. ¶ 34.

On March 17, 2025, March 25, 2025, and April 2, 2025, G.F.F. appeared for his removal hearings by video teleconference. Id. ¶¶ 67, 70, 71. On June 20, 2025, the IJ denied G.F.F.'s application for relief and ordered him removed to Venezuela. Id. ¶ 80. The IJ concluded, however, that G.F.F. had testified credibly that he was not associated with Tren de Aragua. Id. ¶ 81. G.F.F. has appealed the IJ's decision to the BIA, and his appeal remains pending. Id. ¶ 80.

On September 5, 2025, G.F.F. petitioned this Court for a writ of habeas corpus requesting either immediate release or another bond hearing at which the Government would bear the burden to prove by clear and convincing evidence that his continued detention is justified. Pet. 48.

5

On November 7, 2025, counsel for the petitioner advised the Court that the petitioner had been transferred out of the Orange County Correctional Facility and to a facility in Louisiana. ECF No. 15.

**II.**

G.F.F. is detained pursuant to 8 U.S.C. § 1226(a), which authorizes the Government to "arrest[] and detain[]" a noncitizen "pending a decision on whether the alien is to be removed from the United States."

District courts have the authority pursuant to 28 U.S.C. § 2241 to issue a writ of habeas corpus to any petitioner "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "The jurisdiction conferred on federal courts by Section 2241 includes the authority to review [a] noncitizen's claims challenging the constitutionality of [his or her] detention during the pendency of removal proceedings." J.C.G. v. Genalo, No. 24-cv-8755, 2025 WL 88831, at *3 (S.D.N.Y. Jan. 14, 2025).

Although § 1226(e) provides that "[n]o court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any [noncitizen] or the ... denial of bond or parole," "[t]he Supreme Court has made clear that § 1226(e) does not ... limit habeas jurisdiction over constitutional claims or questions of law." Velasco Lopez v.

6

Decker, 978 F.3d 842, 849–50 (2d Cir. 2020). When, as in this case, the petitioner "does not challenge the IJ's weighing of the evidence presented at his bond hearing or the IJ's discretionary decision to deny bond[,] but rather asserts that the procedures for that bond hearing were constitutionally and statutorily infirm," then § 1226(e) "does not strip the Court of jurisdiction." Torres v. Decker, No. 18-cv-10026, 2018 WL 6649609, at *1 (S.D.N.Y. Dec. 19, 2018).

### III.

The Due Process Clause of the Fifth Amendment forbids the Federal Government from depriving any person of "life, liberty, or property, without due process of law." U.S. Const. amend. V. "Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that Clause protects." Zadvydas v. Davis, 533 U.S. 678, 690 (2001). That protection applies to "noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent." Velasco Lopez, 978 F.3d at 850; see also Reno v. Flores, 507 U.S. 292, 306 (1993) ("[T]he Fifth Amendment entitles aliens to due process of law in deportation proceedings.").

G.F.F. argues that his detention fails to comport with due process for two reasons. First, G.F.F. contends that his initial bond hearing was unlawful because the IJ improperly assigned G.F.F. the burden of proving that he was neither a risk of

7

flight nor a danger to the community. According to G.F.F., the Due Process Clause required the IJ to reverse the burden of proof: that is, the Government should have been required to prove by clear and convincing evidence that G.F.F. was a risk of flight or a danger to the community. Second, G.F.F. argues that regardless of whether his first bond hearing was lawful, his prolonged detention warrants a second bond hearing at which the Government bears the burden of proof.

**A.**

The Court need not reach the question whether G.F.F.'s initial bond hearing was unlawful — either under the Due Process Clause or the Administrative Procedure Act — because his prolonged detention plainly entitles him to a renewed bond hearing.

In Velasco Lopez, the Court of Appeals for the Second Circuit explained that "[h]abeas review is not limited to evaluating the lawfulness of detention when it is first imposed ... but is also available to challenge whether, at some point, an ongoing detention has become unlawful." 978 F.3d at 850. To determine whether a noncitizen's detention under § 1226(a) violated the Due Process Clause, the Court of Appeals applied the three-factor balancing test articulated by the Supreme Court in Mathews v. Eldridge, 424 U.S. 319 (1976). "The three Mathews factors are: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous

8

deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Velasco Lopez, 978 F.3d at 851.

First, the Court of Appeals found that the petitioner's private interests were significant. "Case after case instructs ... that in this country liberty is the norm and detention 'is the carefully limited exception.'" Id. (quoting United States v. Salerno, 481 U.S. 739, 755 (1987)). Yet Mr. Velasco Lopez "spent nearly fifteen months incarcerated in the Orange County Correctional Facility where he was held alongside criminally charged defendants and those serving criminal sentences." Id. "The longer the duration of incarceration, the greater the deprivation." Id. at 852.

Second, the Court of Appeals found that "the risk of erroneous deprivation of" the petitioner's liberty interest "through the procedures used" was significant because the IJ in his initial bond hearing assigned the petitioner the burden of proving that he was neither a risk of flight nor a danger to the community. Id. The Government, however, generally has superior capacity to obtain any information bearing on a noncitizen's bail risk. And indeed, "[a]fter fifteen months, the Government

had not found information sufficient to show that Velasco Lopez was a poor bail risk" — in fact, "it was in possession of important information indicating the contrary." Id. at 853. In other words, the IJ had apparently erroneously deprived the petitioner of his liberty interest; by the time the Court of Appeals was considering the petitioner's habeas corpus petition, the Government was in a far better position to provide evidence to help the IJ reach a more accurate conclusion.

Finally, the Court determined that the "Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail," did not justify denying Lopez Velasco another bond hearing. Id. at 854. The Government insisted that it had a strong regulatory interest under § 1226(a) in "(1) ensuring that noncitizen[s] do not abscond and (2) ensuring they do not commit crimes." Id. But the Government "ha[d] not articulated an interest in the prolonged detention of noncitizens who are neither dangerous nor a risk of flight." Id. Indeed, "shifting the burden of proof to the Government to justify continued detention promoted the Government's interest ... in minimizing the enormous impact of incarceration in cases where it serves no purpose." Id.

The Government in this case argues that G.F.F.'s circumstances are different from the petitioner's in Velasco Lopez,

which changes the balance of the Mathews factors in the Government's favor. In the Government's view, G.F.F.'s relatively shorter length of detention — eleven months versus the fifteen months in Velasco Lopez — significantly diminishes his liberty interest and the risk of erroneous deprivation. But this argument is unpersuasive.

Although the Court of Appeals declined to "establish a bright-line rule for when due process entitles an individual detained under § 1226(a) to a new bond hearing with a shifted burden," it acknowledged that "a presumptively constitutional period of detention does not exceed six months." Velasco Lopez, 978 F.3d at 855 n.13 (quoting Zadvydas, 533 U.S. at 701). The Court of Appeals for the Second Circuit reinforced this conclusion in Black v. Decker, 103 F.4th 133 (2d Cir. 2024). In that case, the Court of Appeals again declined to articulate a bright-line rule — this time with respect to detention under § 1226(c) — but held that a petitioner's seven-month detention was sufficiently prolonged to trigger a renewed bond hearing at which the Government would bear the burden of proving by clear and convincing evidence that he was a bail risk. Id. at 151. In the court's view, Mr. Black had been detained "for far longer" than the typical period for detention under § 1226(c). Id. The Court of Appeals echoed its admonition in Velasco Lopez that immigration detention exceeding six months without adequate

11

procedural safeguards raises "serious due process concerns." Id. at 150.

The Government in this case never provides any adequate explanation to rebut the presumption that G.F.F.'s eleven-month detention is unlawful.[2] G.F.F.'s liberty interest is substantial. "The deprivation that [G.F.F.] experienced was not the result of a criminal adjudication," and yet he has been "locked up in jail" for eleven months, Velasco Lopez, 978 F.3d at 851–52 — far longer than the typical detention under § 1226, Demore v. Kim, 538 U.S. 510, 529 (2003) ("The Executive Office for Immigration Review has calculated that, in 85% of the cases in which aliens

---

[2] Indeed, the Government's assertion that eleven months' detention is insufficiently lengthy to trigger a bond hearing that places the burden of proof on the Government is difficult to reconcile with the "overwhelming consensus of judges in this District" that noncitizens detained under § 1226(a) are entitled to such a proceeding even at their initial bond hearings. Fernandez Aguirre v. Barr, No. 19-cv-7048, 2019 WL 3889800, at *3 (S.D.N.Y. Aug. 19, 2019); see also Quintanilla v. Decker, No. 21-cv-417, 2021 WL 707062, at *3 (S.D.N.Y. Feb. 22, 2021) (joining the "overwhelming consensus of judges in this district in concluding that the Government should bear the burden to deny liberty at any Section 1226(a) bond hearing, regardless of the noncitizen's length of detention" (emphasis added)); Banegas v. Decker, No. 21-cv-2359, 2021 WL 1852000, at *2 (S.D.N.Y. May 7, 2021) ("Numerous district courts in the Second Circuit ... have consistently applied these principles to hold that where, as here, the Government seeks to detain a noncitizen pending removal pursuant to § 1226(a), the Fifth Amendment Due Process Clause requires the Government to bear the burden of proving, by clear and convincing evidence, that such detention is justified."). The Government simply asserts, without elaboration, that it "respectfully disagrees" with these decisions. Resp'ts' Mem. Of Law Opp'n to Pet. Writ of Habeas Corpus ("Opp'n Mem.") 11 n.2, ECF No. 10.

are detained pursuant to § 1226(c), removal proceedings are completed in an average time of 47 days and a median of 30 days.").

The risk of erroneous deprivation is similarly substantial. At G.F.F.'s initial bond hearing, G.F.F. bore the burden of proving that he was not a flight risk or danger to the community. "[P]roving a negative (especially lack of danger) can often be more difficult than proving cause for concern." Black, 103 F.4th at 156. Under the burden allocation used by the IJ, any "ambiguities, or lack of information, in the record result in an adverse inference against the detainee." Velasco Lopez, 978 F.3d at 847.

While the Government may lack sufficient information relating to G.F.F.'s risk of flight and danger initially, "the longer detention lasts, the less persuasive this 'lack of information' rationale becomes." Velasco Lopez, 978 F.3d at 853. In this case, the Government has had more than ten months to deploy its "substantial resources" to determine more conclusively whether G.F.F. is a risk of flight or a danger to the community. Id. Indeed, at the initial bond hearing, the IJ concluded that G.F.F. had failed to prove that he was not a member of Tren de Aragua, only later to conclude that the Government had offered insufficient evidence to substantiate its allegation that G.F.F. was a member of the gang. Carney Decl. ¶ 81. G.F.F.'s own "experience

13

demonstrate[s] the value for due process purposes of the burden-shifting" he seeks. Velasco Lopez, 978 F.3d at 853.

As for the third Mathews factor, the Government generically invokes its interest "in detaining aliens under § 1226(a) to ensure that they do not abscond or commit crimes." Opp'n Mem. 13. But, as in Velasco Lopez, "the Government has not articulated an interest in the prolonged detention of noncitizens who are neither dangerous nor a risk of flight." 978 F.3d at 854. If G.F.F. poses either risk, then the Government has the opportunity to prove it at a bond hearing, thereby vindicating its interest. If it cannot, then continuing to detain G.F.F. would not advance the Government's interest in any event.

The Government resists this conclusion with several arguments. It first suggests that the duration of G.F.F.'s detention should be discounted because it "is due to the lengthiness of the appeals process," which G.F.F. chose to pursue. Opp'n Mem. 18. But "in coming to a determination that individuals subject to prolonged detention under § 1226(a) must be afforded process in addition to that provided by the ordinary bail hearing, the Second Circuit in [Velasco Lopez] did not state that [its] holding was conditioned on whether the length of the detention was attributable to the fault of the detainee." Jiminez v. Decker, No. 21-cv-880, 2021 WL 826752, at *7 (S.D.N.Y. 2021). Indeed, the Court of Appeals in Velasco Lopez acknowledged that

14

"[d]etention under § 1226(a) is frequently prolonged because it continues until all proceedings and appeals are concluded." 978 F.3d at 852.

G.F.F. has been detained for more than ten months and the balance of Mathews factors weighs strongly in his favor. He is therefore entitled to a renewed bond hearing at which the Government bears the burden of proving by clear and convincing evidence that he is a risk of flight or a danger to the community.

**B.**

G.F.F. next argues that at his renewed bond hearing, the IJ should be required to consider his ability to pay as well as alternatives to detention when deciding whether to issue a bond and when setting the bond amount. "[C]ourts in this District overwhelmingly agree that IJs must consider these two factors — alternatives to imprisonment and ability to pay — when determining bond for a detained immigration." O.F.C. v. Decker, No. 22-cv-2255, 2022 WL 4448728, at *10 (S.D.N.Y. Sep. 12, 2022) (collecting cases).

The Government counters by invoking Black, which it claims stands for the proposition that a noncitizen's danger to the community is a threshold issue at the bond hearing, and that an IJ can consider alternatives to release only while considering whether the noncitizen is a flight risk, after first determining

15

that he or she is not a danger to the community. Opp'n Mem. 15. But this argument is unresponsive. The Court of Appeals was "focused on the process for setting the amount of bond," "not the availability of bond." L.G.M. v. LaRocco, No. 25-cv-2631, 2025 WL 2173577, at *3 (E.D.N.Y. July 31, 2025). "Setting a bond amount does not come into play unless and until the Court finds that the petitioner does not present a risk of danger to the community." Id. Black says nothing "about what the Court may consider in determining whether the petitioner poses such a risk." Id.

Numerous courts in the Second Circuit have similarly concluded that due process requires that IJs consider alternatives to detention when evaluating a noncitizen's dangerousness. See, e.g., Cantor v. Freden, 761 F. Supp. 3d 630, 637–38 (W.D.N.Y. 2025) ("Due process ... mandates particularized findings ... to sustain the prolonged detention of a noncitizen" and "the government [is] required, in a full-blown adversary hearing, to convince a neutral decisionmaker by clear and convincing evidence that no conditions of release can reasonably assure the safety of the community," which "a neutral decisionmaker cannot possibly [determine] ... without considering less restrictive alternatives to detention"); L.G.M., 2025 WL 2173577, at *3; O.F.C., 2022 WL 4448728, at *10.

16

\* \* \*

G.F.F. is entitled to a renewed bond hearing at which the Government will bear the burden of proving by clear and convincing evidence that G.F.F. is a risk of flight or a danger to his community. In determining whether the Government has demonstrated by clear and convincing evidence that G.F.F. is a risk of flight or danger to the community, the IJ must consider the availability of alternatives to detention. Moreover, the Government shall ensure that G.F.F. receives that bond hearing within seven calendar days of this order.

### IV.

G.F.F. further requests that the Court exercise its inherent authority to release him until his bond hearing. In Mapp v. Reno, the Court of Appeals for the Second Circuit held "that the federal courts have inherent authority to admit or bail individuals properly within their jurisdiction," including immigration detainees petitioning for habeas relief. 241 F.3d 221, 226 (2d Cir. 2001). However, "this power is a limited one, to be exercised in special cases only." Id. The Court may grant this exceptional relief only if the petitioner (1) raises substantial claims, (2) establishes that extraordinary circumstances exist, and (3) shows that bail is necessary to make the habeas remedy effective. Id. at 230.

"Typically, courts do not find extraordinary circumstances for habeas petitions where a constitutionally adequate bail hearing is the relief sought." Coronel v. Decker, 449 F. Supp. 3d 274, 289 (S.D.N.Y. 2020). Yet that is what G.F.F. seeks here. Because the Court is granting G.F.F. the relief he seeks — a renewed bond hearing at which the Government bears the burden of proving his bail risk — he "has not established the existence of extraordinary circumstances that make the grant of bail necessary to make the habeas remedy effective." Reid v. Decker, No. 19-cv-8393, 2020 WL 996604, at *13 (S.D.N.Y. Mar. 2, 2020); see also Fernandez Aguirre, 2019 WL 3889800, at *4 ("Because the Petition seeks only a constitutionally adequate bond hearing ... and because the Court has granted that relief, immediate release is not necessary to make the habeas writ effective.").

G.F.F. insists that the particularly difficult conditions of his detention — specifically, the Government's numerous efforts to summarily deport him to a notorious El Salvadoran prison, see, e.g., Carney Decl. ¶¶ 35-66, 73-76 — both present extraordinary circumstances and make his immediate release necessary to make the habeas remedy effective. Pet'r's Reply Supp. Pet. Writ of Habeas Corpus ("Reply Mem.") 18, ECF No. 13. It is unclear, however, how continued detention would deprive G.F.F. of his ability to participate meaningfully in the renewed bond hearing, particularly because that hearing is scheduled for no

18

later than seven days from the date on which this order is issued.

## V.

Finally, G.F.F. moves for an award of fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d). But as G.F.F. essentially acknowledges in his reply brief, that request is premature. G.F.F. should instead "make a proper EAJA motion to this Court." Reply Mem. 20.

## VI.

The Court has considered all the arguments raised by the parties. If any argument was not specifically addressed, it is either moot or without merit. For the foregoing reasons, the petition is **granted in part**. Within seven calendar days of this Memorandum Opinion and Order, the immigration court must either hold a bond hearing at which the Government bears the burden of proving by clear and convincing evidence that G.F.F. is a risk of flight or a danger to the community, or release G.F.F. In determining whether to grant bond, the IJ shall consider the availability of alternative conditions of release, and in determining the amount of any bond imposed, the IJ shall consider G.F.F.'s ability to pay. The petition is **denied in part** to the

extent G.F.F. seeks immediate release until his renewed bond hearing.

The Clerk is respectfully directed to close ECF Nos. 1 and 15, and to close this case.

**SO ORDERED.**

Dated:  New York, New York
        **November 10, 2025**

_____
John G. Koeltl
**United States District Judge**