UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
———————————————————————————————

G.F.F.,

                    Petitioner,                25-cv-7368 (JGK)

          - against -                          MEMORANDUM OPINION
                                               AND ORDER
LADEON FRANCIS, ET AL.,

                    Respondents.
———————————————————————————————

JOHN G. KOELTL, District Judge:

The petitioner, G.F.F., filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging the lawfulness of his ongoing detention by Immigration and Customs Enforcement ("ICE"). Pet. Writ of Habeas Corpus, ECF No. 1. G.F.F. sought, among other things, an order requiring the Government to provide him with an individualized bond hearing before an impartial adjudicator. On November 10, 2025, this Court granted the petition in part, holding that, under the framework set out by the Court of Appeals for the Second Circuit in Black v. Decker, 103 F.4th 133 (2d Cir. 2024), G.F.F.'s prolonged detention without an adequate bond hearing deprived him of due process. G.F.F. v. Francis, No. 25-cv-7368, 2025 WL 3141735 (S.D.N.Y. Nov. 10, 2025). This Court held that the respondents must either release G.F.F. or provide him with a bond hearing at which the Government bore the burden of proving by clear and convincing evidence that G.F.F. was a risk of flight or a danger to the community. Moreover, if the Government

proved by clear and convincing evidence that G.F.F. posed a risk of flight or a danger to the community, the immigration court was instructed to consider the availability of alternative conditions of release that would reasonably ensure G.F.F.'s attendance at future immigration proceedings and the safety of the community.

On November 13, 2025, an immigration judge ("IJ") held a renewed bond hearing. The IJ denied G.F.F.'s request for release on the ground that the Government had proved by clear and convincing evidence that G.F.F. posed a risk of flight and that alternatives to detention would not adequately protect the Government's interests.

G.F.F. now moves to enforce this Court's November 10, 2025 order. G.F.F. argues that the Government failed to cure the constitutional deficiency with his bond hearing as ordered by the Court because the IJ did not meaningfully consider alternatives to detention, and that he must therefore be released. For the following reasons, G.F.F.'s motion is **granted in part.**

## I.

G.F.F. is a Venezuelan national. Decl. of G.F.F. Supp. Pet. Writ of Habeas Corpus ("G.F.F. Decl.") ¶ 1, ECF No. 1-2. On May 15, 2024, G.F.F. unlawfully entered the United States near El Paso, Texas, where he was detained by an immigration officer.

2

Declaration of Michael Charles ("Charles Decl.") ¶ 3, ECF No. 9. The Department of Homeland Security ("DHS") determined that G.F.F. was inadmissible and subject to removal pursuant to U.S.C. § 1225(b)(1). Id.

On May 17, 2024, an asylum officer conducted a credible-fear interview of G.F.F. pursuant to 8 C.F.R. § 208.30(d), during which the officer found that G.F.F. had established a credible fear of persecution in Venezuela based on his sexual orientation. Charles Decl. ¶ 5. G.F.F. was then placed into removal proceedings pursuant to 8 C.F.R. § 208.30(f). Id. In the meantime, G.F.F. was released on his own recognizance, and he moved to Chicago. Declaration of Grace Carney Brown Supp. Pet. Writ of Habeas Corpus ("Carney Decl.") ¶ 8, ECF No. 1-1.

On May 19, 2024, Customs and Border Protection issued a Notice to Appear ("NTA") charging G.F.F. as removable pursuant to 8 U.S.C. § 1182(a)(6)(A)(i) as a noncitizen present in the United States without being admitted or paroled, or who arrived in the United States at a time or place other than as designated by the Attorney General. Charles Decl. ¶ 6. G.F.F. simultaneously enrolled in the Alternative to Detention ("ATD") program. Id. ¶¶ 6, 7. The NTA ordered G.F.F. to appear at the Chicago Immigration Court on November 20, 2024 for his first master calendar hearing. Id. ¶ 6.

3

In October 2024, G.F.F. was terminated from the ATD program after missing an in-person check-in on July 18, 2024, as well as additional electronic check-ins. Id. ¶ 8. G.F.F. also failed to appear for his master calendar hearing, and ICE moved to proceed against him in absentia. Id. ¶ 9. Instead, the Chicago Immigration Court rescheduled his hearing to January 6, 2025. Carney Decl. ¶ 12.

On December 5, 2024, DHS officials encountered G.F.F. in the Bronx, New York, while executing an arrest warrant for someone else. Charles Decl. ¶ 10. The DHS officials arrested G.F.F. and presented him with a Notice of Custody Determination, which stated that he would be detained "pending a final administrative decision in his case."[1] Id. ¶¶ 10-11. The next day, on December 6, 2024, DHS issued a Form I-213, which stated that G.F.F. was a member or associate of the transnational gang Tren de Aragua. Id. ¶ 12.

On January 24, 2025, G.F.F. filed written pleadings conceding his removability as charged in the NTA and applied for relief from removal. Id. ¶ 20. G.F.F. also requested a bond hearing. Id. ¶ 21. The IJ held that bond hearing on January 29, 2025 and declined to release G.F.F. on bond. The IJ found that

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all internal alterations, citations, footnotes, and quotation marks in quoted text.

G.F.F. had failed to prove that he was not a member of Tren de Aragua. Carney Decl. ¶¶ 22, 32. The IJ also found that G.F.F. was a flight risk based on his failure to appear for his first master calendar hearing scheduled at the Chicago Immigration Court. Id. ¶ 32.

On September 5, 2025, G.F.F. petitioned this Court for a writ of habeas corpus requesting either immediate release or another bond hearing at which the Government would bear the burden of proving by clear and convincing evidence that his continued detention was justified. Pet. 48. On November 10, 2025, this Court granted G.F.F.'s petition in part. Specifically, the Court instructed that "[w]ithin seven calendar days" of the order, "the immigration court must either hold a bond hearing at which the Government bears the burden of proving by clear and convincing evidence that G.F.F. is a risk of flight or a danger to the community, or release G.F.F." G.F.F., 2025 WL 3141735, at *7. "In determining whether to grant bond, the IJ shall consider the availability of alternative conditions of release, and in determining the amount of any bond imposed, the IJ shall consider G.F.F.'s ability to pay." Id.

On November 13, 2025, the immigration court held a renewed bond hearing for G.F.F. See Hearing Tr. ("Tr."), ECF No. 19-2. G.F.F. and the Government submitted evidence to the IJ before the hearing. The Government's evidence included, among other

things, records reflecting G.F.F.'s ATD reporting history. See ECF Nos. 19-5 at 44; 19-6 at 12. These records show that G.F.F. missed daily biometric check-ins fifteen times between August 8, 2024 and September 30, 2024. ECF No. 19-6 at 12. As a result, his enrollment in the ATD program was terminated on October 3, 2024. Id. at 13. The Government also submitted a written personal statement by G.F.F., dated February 20, 2025, in which he acknowledged that he missed his November 20, 2024 immigration court date. See ECF No. 19-5 at 44.

The IJ ultimately concluded that "the government ha[d] not met its burden to demonstrate with convincing evidence that [G.F.F. is] a danger" to the community. Tr. at 23. The IJ did conclude, however, that G.F.F. posed a risk of flight. The IJ noted the G.F.F.'s "90% compliance rate" on ATD check-ins was problematic because "[i]t's not as if he missed dates ... here and there," but rather "he went to New York" and missed more than a dozen check-ins. Id. at 26. The IJ also noted that G.F.F. "has a removal order and he's made it clear he's very afraid to go back [to Venezuela] and doesn't want to go back." Id.

The IJ also concluded that there are not "sufficient safeguards to release [G.F.F.] to ensure that he would appear" at future immigration proceedings. Id. The IJ considered geolocation monitoring but determined that it would be ineffective because G.F.F. could simply remove it, and G.F.F.

6

had "already shown a pattern of ignoring the requirements to report" in any event. Id. at 27.

## II.

G.F.F. moves to enforce this Court's November 10, 2025 order, which conditionally granted his habeas petition but gave the Government seven days to cure the constitutional deficiency in G.F.F.'s detention by affording him a constitutionally adequate bond hearing. G.F.F. argues that the Government failed to cure the deficiency as ordered by the Court, and that he must be released.

Section 1226(e) of Title 8 provides that "[n]o court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole." 8 U.S.C. § 1226(e). Federal district courts are thus "generally barred from reviewing [an] immigration judge's bond determinations." Arana v. Barr, No. 19-cv-7924, 2020 WL 2094098, at *8 (S.D.N.Y. May 1, 2020).

This provision, however, does not "limit habeas jurisdiction over constitutional claims or questions of law." Velasco Lopez v. Decker, 978 F.3d 842, 850 (2d Cir. 2020). "Whether the IJ failed to apply the correct legal standard and to hold the government to its burden of proof is a question of law that this Court may review" de novo. R.R.M.C. v. Decker,

7

No. 22-cv-2952, 2022 WL 4639674, at *3 (S.D.N.Y. Sept. 30, 2022). Moreover, the parties agree that the Court "retains jurisdiction to review compliance with a conditional grant of the writ of habeas corpus, that is, to determine whether the Government properly cured the identified constitutional error." J.M.P. v. Arteta, No. 25-cv-4987, 2025 WL 2984913, at *12 (S.D.N.Y. Oct. 23, 2025). "In reviewing a motion to enforce, ... the Court's task is narrow: it is to determine whether [the Government] complied with this Court's order, not to review the hearing evidence de novo." Arana, 2020 WL 2094098, at *7.

Based on the record before him, the IJ correctly found that the Government failed to prove by clear and convincing evidence that G.F.F. is a danger to the community. The IJ also correctly found that the Government proved by clear and convincing evidence that G.F.F. is a risk of flight based upon his strong incentive to flee combined with his past failures to appear at various immigration appointments as well as his failure to comply with the requirements of the ATD program.

The IJ did not, however, meaningfully consider whether there were reasonable alternatives to detention that would reasonably ensure G.F.F.'s continued presence. Indeed, except for geolocation monitoring, which the IJ dismissed as ineffective in cursory fashion because it was not effective in

8

all cases, the IJ failed to consider expressly any alternatives to detention. That was error. See Fernandez Aguirre v. Barr, No. 19-cv-7048, 2019 WL 4511933, at *5 (S.D.N.Y. 2019) ("The bond hearing transcript is utterly [de]void of any discussion of whether non-incarceratory measures, such as home detention, electronic monitoring, and so forth, could mitigate any danger that Petitioner posed to the safety of the community."); R.R.M.C., 2022 WL 4639674, at *5 (granting conditional writ of habeas corpus where the IJ "failed meaningfully to consider alternatives to detention"). The fact that geolocation monitoring fails to ensure an alien's continued presence in a very small percentage of cases does not mean, as the Government argues, that there is no combination of conditions sufficient to reasonably ensure G.F.F.'s continued presence.

### III.

Federal courts are authorized to "dispose of [a habeas petition] as law and justice requires," 28 U.S.C. § 2243, and are afforded "broad discretion ... in fashioning the judgment granting relief to a habeas petitioner," Hilton v. Braunskill, 481 U.S. 770, 775 (1987). "Typically, the relief granted in federal habeas corpus proceedings is a conditional writ to allow the government an opportunity to correct the constitutional defects in the challenged proceeding." Mathon v. Searls, 623 F. Supp. 3d 203, 218 (W.D.N.Y. 2022). Accordingly, the Court

9

initially issued a conditional writ of habeas corpus. See ECF No. 17. But as explained above, the IJ failed to comply with the conditions set forth in the Court's order — namely, the condition that the IJ meaningfully consider reasonable alternatives to detention. G.F.F.'s detention therefore remains unlawful, and the Court must determine the appropriate relief.

Instead of remanding the action to the IJ to conduct yet another bond hearing, the Court requested that the parties propose a list of conditions of release that would reasonably ensure G.F.F.'s presence at future immigration proceedings. ECF No. 29. Although the respondents maintain that there are no conditions of release sufficient to ensure that G.F.F. will attend future immigration proceedings, both parties suggested conditions from which the Court determined the following conditions will reasonably ensure G.F.F.'s continued presence:

1. G.F.F. will post a $10,000 monetary bond with ICE;

2. G.F.F. will be subject to a curfew from 8:00 p.m. to 7:00 a.m. and remain confined at the Metropolitan Church shelter during those hours except that G.F.F. may leave the shelter during those hours for preapproved work, legal appointments, medical appointments, or as otherwise authorized by ICE or the Court;

3. G.F.F. will report once every two weeks for in-person check-ins with ICE at the ICE New York City Field Office, located at 26 Federal Plaza, 9th Floor, New York, New York 10278, at a time and manner to be prespecified by ICE with reasonable notice to G.F.F.;

10

4.    G.F.F.'s location will be monitored through the use of an ankle monitor or bracelet monitor;

5.    G.F.F. will not associate with known gang members;

6.    G.F.F. will not commit any crimes while released;

7.    ICE may issue an order of supervision ("OSUP") incorporating the conditions of release contained within this Order, and in the event there is a violation of the conditions of release as reflected in the OSUP, ICE shall address those violations in accordance with applicable OSUP revocation regulations, see 8 C.F.R. § 241.4(l)(1) & (2)(ii);

8.    G.F.F. or ICE can request that the Court modify these conditions;

9.    The Government shall promptly return G.F.F. to New York City, New York; and

10.   G.F.F. shall be released after he is returned to New York City and the above-referenced bond is posted.

When "deciding whether release from custody is the appropriate remedy for the government's failure to comply with a conditional writ of habeas corpus, a district court should consider the risks posed by releasing" the petitioner. Mathon, 623 F. Supp. 3d at 219. In this case, the IJ correctly found that the petitioner is not a danger to the community. While the IJ correctly found that the petitioner is a risk of flight, "the government has not demonstrated to anyone that it is highly probable that no condition or combination of conditions of release would suffice to serve its interest in minimizing" G.F.F.'s risk of flight. Hechavarria v. Whitaker, 358 F. Supp.

11

3d 227, 243 (W.D.N.Y. 2019). The Court therefore orders his release on the above conditions, which reasonably minimize G.F.F.'s risk of flight. See Mathon, 623 F. Supp. 3d at 219 (granting motion to enforce and imposing conditions of release including electronic monitoring).

**IV.**

The Court has considered all the arguments raised by the parties. If any argument was not specifically addressed, it is either moot or without merit. For the foregoing reasons, G.F.F.'s motion to enforce is **granted in part.** The respondents shall release G.F.F. consistent with the ten conditions enumerated above.

**SO ORDERED.**
**Dated:    New York, New York**
**April 4, 2026**

_____
**John G. Koeltl**
**United States District Judge**

12